UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JASON ET CATO, also known as
Jason Cato,

                                   Plaintiff,                9:22-CV-1173
                                                           (AMN/CFH)

        v.

PATRICK REARDON, et al.,

                                     Defendants.

_____

APPEARANCES:

JASON ET CATO
Plaintiff, pro se
21-B-0271
Bare Hill Correctional Facility
Caller Box 20
Malone, NY 12953

ANNE M. NARDACCI
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION AND PROCEDURAL HISTORY

       In October 2022, pro se plaintiff Jason ET Cato ("plaintiff") commenced this action

pursuant to 42 U.S.C. § 1983 ("Section 1983") and sought leave to proceed in forma

pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application").  By Decision and

Order filed on January 25, 2023 (the "January Order"), the Court found that, as of the date

that plaintiff commenced this action, plaintiff had acquired at least "three strikes" because he

filed three previous civil actions while incarcerated that were dismissed based on

frivolousness or failure to state a claim upon which relief may be granted.  Dkt. No. 6 at 3-4.

After determining that plaintiff had accumulated "three strikes" before filing his complaint, the Court considered plaintiff's allegations solely for purposes of evaluating whether they were sufficient to qualify him for the "imminent danger" exception of 28 U.S.C. § 1915(g).  The Court concluded that plaintiff's allegations did not plausibly suggest that he faced "imminent danger" of "serious physical injury" when he signed the complaint.  Dkt. No. 6 at 6.  In light of plaintiff's pro se status, plaintiff's IFP Application was held in abeyance and he was directed to either (i) pay the Court's filing fee of four hundred dollars ($402.00) in full, or (ii) file an amended complaint demonstrating that he faced an "imminent danger of serious physical injury" from the named defendant(s) when he commenced this action.  *Id*. at 6-7.  Plaintiff was directed to comply with the January Order within thirty days.  *Id*.

On March 8, 2023, the Court issued an Order dismissing the action, without prejudice, due to plaintiff's failure to comply with the January Order.  Dkt. No. 7 (the "March Order").  On the same day, Judgment was issued.  Dkt. No. 8.  On March 27, 2023, plaintiff filed a Notice of Appeal (Dkt. No. 9) and an amended complaint (Dkt. No. 10).

On September 8, 2023, the case was remanded from the Second Circuit for consideration of the amended complaint, "as a timely motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)."  Dkt. No. 12.

In October 2023, plaintiff filed a second amended complaint.  Dkt. No. 14.  In a Decision and Order filed on December 12, 2023 (the "December Order"), the Court vacated the Judgment, accepted the second amended complaint for filing, and considered the allegations in the pleading for the purposes of evaluating whether plaintiff qualified for the "imminent danger" exception.  *See generally* Dkt. No. 15.  Upon review of the pleading, the Court concluded that plaintiff was not faced with "imminent danger" of "serious physical

injury" when he signed the original complaint.  The Court denied plaintiff's IFP application pursuant to 28 U.S.C. § 1915(g) and advised plaintiff that the action would be dismissed unless, within thirty (30) days of the date of the December Order, plaintiff paid the Court's filing fee of four hundred and two dollars ($402.00) in full.  *Id.*

On December 12, 2023, plaintiff filed a motion seeking permission to amend his complaint, with a proposed amended complaint.  Dkt. No. 16.  On January 10, 2024, plaintiff filed a "motion review for retaliation."  Dkt. No. 18.  The same day, plaintiff remitted the filing fee, in full.

## II.    MOTION TO AMEND

At the time plaintiff filed his motion to amend, service had not been attempted on any of the defendants.  Thus, plaintiff is not required to obtain the Court's leave before amending his complaint.  As a result, the Court will consider plaintiff's proposed amended complaint (Dkt. No. 16-1) as the third amended complaint, filed as of right in accordance with Rule 15(a)(1) of the Federal Rules of Civil Procedure.   Accordingly, plaintiff's motion is denied as unnecessary.

## III.    MOTION FOR REVIEW

On January 10, 2024, plaintiff filed a submission entitled "Motion for Review" with a caption that identifies two new defendants and additional factual allegations.  *See generally* Dkt. No. 18.  Plaintiff's motion is denied.  However, affording plaintiff the special solicitude due to a pro se litigant, the Court will construe this submission as a supplement to the third amended complaint.  The Clerk of the Court shall attach this submission to the operative pleading.

3

III.    **REVIEW OF THIRD AMENDED COMPLAINT**

   **A. Legal Standard**

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."[1]   28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

   [1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

The Court will construe the allegations in the third amended complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B. Summary of Third Amended Complaint**

In the third amended complaint, plaintiff identifies the following individuals as new defendants: DOCCS, Correction Officer Mr. Blackman ("Blackman"), and Sergeant Cucumber ("Cucumber").[2]  *See* Third Am. Compl. at 1. The third amended complaint does not contain any allegations or causes of action against the following previously named defendants: Schneider, Murphy, Mitchell, Bell, Coomber, Dibari, Trombley, Davis, Thisse,

---

[2]  The Clerk of the Court is directed to add these individuals as defendants to the Docket Report for this action.

Smith, Keller, and Butler.[3]  *See generally* Third Am. Compl.  Plaintiff asserts claims related to wrongdoing that occurred, if at all, during his incarceration at Marcy Correctional Facility ("Marcy C.F.").  *See id.*

On February 11, 2022, plaintiff's legal mail was withheld.  Third Am. Compl. at 12. Plaintiff received his mail on March 3, 2022, "one day after the Oneida County Supreme Court issued [a] writ of habeas corpus" and a court ordered deadline for plaintiff to "answer." *Id*.

Defendant Officer Snedecker ("Snedecker") directed plaintiff to remove his "box braids."  Third Am. Compl. at 9.  Plaintiff informed Snedecker that it was a religious hairstyle. *Id*.  Snedecker responded with expletives and racial slurs and directed plaintiff to "get against the wall."  *Id*.  As plaintiff stood on the wall, Snedecker "kick[ed] his feet to spread wider and push[ed] his head to stay straight forward."  *Id*.  Snedecker frisked plaintiff and groped his penis and scrotum.  *Id*.  Plaintiff filed a grievance related to the incident and contacted the Office of Special Investigations ("OSI").  Third Am. Compl. at 9-10.  In June 2022, an investigator interviewed plaintiff.  *Id.* at 10.

On October 17, 2022, plaintiff received a false misbehavior report.  Dkt. No. 18 at 2. As a result, plaintiff was placed in segregated confinement for 156 days.  *Id*. at 5.

On December 11, 2022, plaintiff was "sexually assaulted" by defendant Correction Officer Bradbarry ("Bradbarry") in the mess hall corridor.  Third Am. Compl. at 8-9, 27. Bradbarry ordered plaintiff to "get on the wall."  *Id*.  While frisking plaintiff, Bradbarry "went into plaintiff's backside of his pants and swiped his hands between plaintiff['s] buttocks and

---

[3]  The Clerk of the Court is directed to terminate these defendants from the Docket Report.

penetrated plaintiff's rectum with one finger[.]"   *Id*. at 9.   Defendant Blackman was present during the incident, held pepper spray in plaintiff's face, and threatened to "spray" him "like a skunk" if he moved from the wall.   *Id*.   After the incident, plaintiff received a misbehavior report falsely charging plaintiff with refusing to work.   Third Am. Compl. at 9.

Between September 2021 and March 2023, DOCCS did not provide Rastafarian services.   Third Am. Compl. at 10.

On March 1, 2023, plaintiff received legal mail, that had been opened, dated December 1, 2022 from the United States District Court for the Western District of New York. Third Am. Compl. at 12-13.

Plaintiff's merit release date was December 29, 2023.   Dkt. No. 18 at 1.   However, plaintiff remains confined in DOCCS' custody.   *Id*.

Construing the third amended complaint liberally, plaintiff asserts the following: (1) Eighth Amendment claims against Bradbarry, Blackman, and Snedecker; (2) First Amendment free exercise claim and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) claims against defendant Imam Hadian ("Hadian") and Snedecker; (3) claims related to violations of DOCCS' Directives; (4) First Amendment access-to-court claims; (4) Fourteenth Amendment claims related to his merit release date; (5) First Amendment retaliation claims; and (6) supervisory claims against DOCCS and defendant Superintendent Patrick Reardon ("Reardon").   *See generally* Third Am. Compl. and Dkt. No. 18.   Plaintiff seeks monetary damages.   *See* Third Am. Compl. at 31, 33.

### C.  Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of

action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp*., 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983.  *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id*. (quoting *Iqbal,* 556 U.S. at 676).

### 1. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing

8

a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. Mar. 28, 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does

9

not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, plaintiff's claims for monetary damages against DOCCS and defendants in his or her official capacity are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b).  *See Rother v. Dep't of Corr. and Cmty. Supervision*, 970 F.Supp.2d 78, 89–90 (N.D.N.Y. 2013) (holding that DOCCS is a New York State agency that has immunity under the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state.").

### 2.  Claims Against Cucumber, Martuscello, D'Amore, and Barbosa

Plaintiff names Cucumber, Martuscello, D'Amore, and Barbosa as defendants in the caption and list of parties.  *See* Third Am. Compl. at 1, 3-4; Dkt. No. 18.  However, the complaint lacks factual allegations suggesting that Cucumber, Martuscello, D'Amore, and Barbosa were personally involved in conduct that violated plaintiff's constitutional rights. Accordingly, plaintiff fails to state a cognizable claim against these individuals.  *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### 3.  Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."  *Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015).  "[A] single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct."  *Id*.

Allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim.  *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013).  To establish liability under a failure to

intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Eighth Amendment claims against Bradbarry, Blackman, and Snedecker require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Free Exercise Claims

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id*. (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)).  To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; and (2) the challenged practice of the prison officials infringes upon the religious belief.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his

sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591).[4]  A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature.  *Ford*, 352 F.3d at 590.  A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir.1996).

Plaintiff's claim that Snedecker harassed him for wearing box braids, without more, does not suggest that he interfered with or substantially burdened plaintiff's ability to practice his religion to state a plausible First Amendment claim.  *See Castillo v. Hart*, No. 20-CV-6148, 2020 WL 5095941, at *3 (S.D.N.Y. Aug. 28, 2020); *Williams v. Colby*, No. 22-CV-4022, 2022 WL 2819579, at *4 (S.D.N.Y. July 18, 2022) (holding that harassment or verbal abuse, without an additional burden or interference, are insufficient to state a claim under the Free Exercise Clause).

Plaintiff's claims regarding the availability of Rastafarian services are also subject to dismissal.  The pleading lacks any facts suggesting that any named defendant was personally involved in the alleged deprivation of Rastafarian services or that any defendant was aware of plaintiff's request for Rastafarian services.  In fact, while Hadian is named as a

---

[4]  The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed. App'x 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim).  In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

defendant in the caption and list of parties, he is not referenced anywhere in the body of the pleading. *See Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing First Amendment claims related to the lack of Rastafarian services due to lack of facts suggesting the defendants' involvement); *see Cipriani*, 2007 WL 607341, *1 (citation omitted).

Thus, plaintiff's free exercise claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5.  RLUIPA Claims

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a) (2012).   Courts analyzing RLUIPA claims use the First Amendment "sincerely held religious beliefs" standard to determine whether a plaintiff was engaged in a "religious" exercise.  *See Sioleski v. McGrain*, No. 10-CV-0665S, 2012 WL 32423, at *2, n. 2 (W.D.N.Y. Jan. 5, 2012) (citations omitted). There is no cognizable private right of action under RLUIPA against state officers sued in their individual capacities.  *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013).  Only injunctive relief is available under RLUIPA and RLUIPA does not authorize monetary damages against state officers in their official capacities.  *Loccenitt v. City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013); *see also Sossamon v. Texas*, 563 U.S. 277 (2011).

14

Initially, the Court notes that the third amended complaint does not include any request for injunctive relief.  Moreover, plaintiff was transferred from Marcy C.F. to Bare Hill Correctional Facility.  *See* Dkt. No. 13.  Thus, even assuming plaintiff asserted claims for injunctive relief against the Marcy C.F. defendants, those claims are moot.  *See Brandon v. Schroyer*, No. 9:13-CV-0939 (TJM/DEP), 2016 WL 1638242, at \*9 (N.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, 2016 WL 1639904 (N.D.N.Y. Apr. 25, 2016) (citing *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Blalock v. Jacobsen*, No. 13-CV-8332, 2014 WL 5324326, at \*3 (S.D.N.Y. Oct. 20, 2014) ("As all of the Moving Defendants are employed at Green Haven, and Blalock is presently incarcerated at Eastern Correctional Facility, any claims for injunctive relief against the Moving Defendants are moot.").

Accordingly, plaintiff's RLUIPA claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Claims Related to Violations of DOCCS' Directives

A Section 1983 claim brought in federal court is not the appropriate vehicle by which to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96-CV-7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001) (holding that allegations of prison regulation violations "are not cognizable under [Section] 1983" because "Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles"); *see also Sanders v. Gifford*, No. 11-CV-0326, 2014 WL 5662775, at \*4 (N.D.N.Y. Nov. 4, 2014) (holding that failure to

follow a DOCCS directive does not give rise to a § 1983 claim).

Accordingly, the Court dismisses these claims with prejudice since the defects are substantive, rendering amendment futile.  *See Cuoco*, 222 F.3d at 112.

### 7. Access to Court Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  The right of access to the courts is also implicated when a prisoner experiences interference with his mail.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).  "However, this right is not 'an abstract, freestanding right . . . ' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " *Collins v. Goord*, 438 F.Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury.  *See Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

16

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. at 415-16.

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] ... to challenge the conditions of [his] confinement." *Id*. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

At this juncture, plaintiff's access-to-court claims are dismissed for failure to state a claim. Plaintiff has not plead facts suggesting that any named defendant personally withheld,

or tampered with, his legal mail.  Moreover, plaintiff has not sufficiently described his legal claim(s) to allow the Court to conclude that he suffered an actual injury.  Accordingly, these claims are dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1).  *See, e.g., Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *11 (Apr. 23, 2008) ("Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent basis for dismissal[.]"); *Joseph v. State, Dep't of Corrs*., No. 92-CV-1566, 1994 WL 688303, at *1 (N.D.N.Y. Nov. 24, 1994) (dismissing the plaintiff's access to courts claim because the complaint "failed to allege any adverse effect caused by the alleged denial of his legal mail").

### 8.  Fourteenth Amendment Claims

In the proposed pleading, plaintiff attempts to assert Fourteenth Amendment claims and contends that the October 2022 misbehavior report impacted his merit release.  *See* Dkt. 18 at 2.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' "  *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13).  "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release."  *Barna*, 239 F.3d at 171.  "An inmate's federally-protected liberty interest in parole release is limited to not being denied parole for

arbitrary or impermissible reasons." *Villalobos v. New York Div. of Parole*, No. 09 CIV 8431, 2010 WL 3528926, at *3 (S.D.N.Y. Aug. 23, 2010) *appeal dismissed and remanded sub nom. Villalobos v. New York State Div. of Parole*, 475 F. App'x 400 (2d Cir. 2012). "The arbitrary or capricious reasons must be based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." *Mabry v. Cuomo*, No. 11 CIV. 4456, 2012 WL 1711549, at *2 (S.D.N.Y. May 9, 2012) (citation omitted). Similarly, with respect to merit allowances, "[a]lthough inmates have a liberty interest in good time credit they have already earned, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit." *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (internal citation omitted); *Lighthall v. Vadlamudi*, No. 9:04-CV-721 (NAM/RFT), 2006 WL 721568, at *15 (N.D.N.Y. March 17, 2006) (holding that the state has not created a protected liberty interest in "merit time" or any program that impacts good time credit). "[Section] 1983 is not the proper vehicle . . . to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." *Fifield v. Eaton*, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009).

Accordingly, plaintiff's Fourteenth Amendment claims are dismissed for failure to state a claim. *See Hill v. Goord*, 63 F.Supp.2d 254, 260-61 (E.D.N.Y. 1999) ("Courts have held that *Heck* applies to § 1983 damage actions challenging the fact or duration of parole release on the rationale that the plaintiff is in effect attacking his confinement and state court remedies have not been exhausted.") (citations omitted); *Butterfield v. Bail*, 120 F.3d 1023,

19

1024 (9th Cir. 1997) (holding that inmate's claims do not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of writ of habeas corpus").[5]

### 9. First Amendment Retaliation Claims

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). As to the first element of a retaliation claim, the filing of a grievance constitutes protected speech. *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001). The Second Circuit has defined "adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill*, 389 F.3d at 381 (emphasis in original). The objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001). While there is no "bright line . . . defin[ing] the outer limits" of the

---

[5] Plaintiff's Fourteenth Amendment claims are also subject to dismissal for failure to plead that any named defendant was personally involved in decisions related to plaintiff's continued confinement.

"temporal relationship," courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection.  *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45–46 (2d Cir. 1980); *but see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's protected activity, was in response to it).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489,491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13.

Plaintiff's retaliation claims are dismissed for failure to state a claim.  Plaintiff alleges that "defendants retaliated against [him] by placing [a] false misbehavior report against him due to the plaintiff filing this action[.]"  Dkt. No. 18 at 1-2.  Plaintiff also alleges that "defendants continuously retaliated against [him] for exhausting his rights to file grievances, lawsuits, and claims[.]"  *Id*. at 4, 5.  However, the third amended complaint lacks facts suggesting that any named defendant was personally involved in the alleged retaliatory conduct.  Plaintiff refers to a misbehavior report issued in October 2022, but the identity of the person or persons who issued the report is unknown.  Further, even assuming plaintiff engaged in protected conduct when he filed grievances and this lawsuit, plaintiff has not

identified any individual who retaliated against him nor has he explained how those individuals were aware of the protected speech, or a connection between that individual and the protected conduct.

Simply put, plaintiff's retaliation claims are overly vague and non-specific and thus, are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10.  Claims Against Reardon

Plaintiff claims that Reardon failed to properly train, supervise, monitor, or investigate their officers and agents, including defendants.  *See* Third Am. Compl. at 17.  Plaintiff alleges that Reardon "tolerated" the actions of his officers and staff and received grievance and letters and was "well aware of the defendants' misconduct."  *Id.* at 17, 24, 30.  "Even assuming the [defendant] was aware of the grievance or complaints, his 'mere knowledge' is insufficient to adequately plead a Section 1983 violation."  *Brunache v. Annucci*, No. 22-CV-196, 2023 WL 146850, at *15 (W.D.N.Y. Jan. 9, 2023).  In light of *Tangreti*, plaintiff's attempt to plead personal involvement based upon the receipt of grievances or letters, lacks merit because it does not plausibly suggest "[t]he factors necessary to establish" a constitutional claim.  *See Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *see also Verdi v. Farah*, No. 9:22-CV-0825 (BKS/CFH), 2022 WL 4236401, at *7 (N.D.N.Y. Sept. 14, 2022) (holding that, even assuming the defendant "received and read [the] plaintiff's letters, and that *Tangreti* did not entirely eliminate supervisory liability under a failure-to-remedy theory, [the] defendant['s] alleged refusal to

22

override the grievance process does not plausibly suggest" that he violated the plaintiff's constitutional rights).

Accordingly, plaintiff's claims against Reardon are dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b) f or failure to state a claim upon which relief may be granted. *See Balentine v. Annuci*, No. 9:21-CV-1383 (LEK/CFH), 2022 WL 2046302, at *10 (N.D.N.Y. June 7, 2022) (dismissing claims against Reardon based upon the receipt of letters and grievances), *reconsideration denied sub nom. Balentine v. Doe*, No. 2022 WL 17818553 (N.D.N.Y. Dec. 20, 2022).

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to amend his complaint (Dkt. No. 16) is **DENIED** as unnecessary; and it is further

**ORDERED** that plaintiff's motion to review (Dkt. No. 18) is **DENIED** as unnecessary; and it is further

**ORDERED** that the Clerk of the Court shall attach a copy of the submission at Dkt. No. 18 to the submission at Dkt. No. 16-1; and it is further

**ORDERED** that the Clerk of the Court is directed to re-docket plaintiff's proposed amended complaint (Dkt. No. 16-1) as a third amended complaint filed as of right in accordance with Rule 15(a)(1) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk of the Court shall add DOCCS, Blackman, and Cucumber to the Docket Report as defendants; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to  28

23

U.S.C. § 1915A(b): (1) claims for monetary damages against DOCCS and defendants in their official capacities; and (2) claims related to violations of DOCCS' Directives; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims against Cucumber, Martuscello, D'Amore, and Barbosa; (2) First Amendment free exercise claims; (3) RLUIPA claims; (4) First Amendment access-to-court claims; (5) Fourteenth Amendment due process claims; (6) First Amendment retaliation claims; and (7) claims against Reardon;[6] and it is further

**ORDERED** that the Eight Amendment claims against Bradbarry, Blackman, and Snedecker survive the Court's sua sponte review under 28 U.S.C. § 1915A(b) and require a response; and it is further

**ORDERED** that Reardon, Schneider, Murphy, Mitchell, Bell, Coomber, Martuscello, D'Amore, Dibari, Barbosa, Trombley, Davis, Thisse, Smith, Hadian, Keller, Butler, Cucumber, and DOCCS are **DISMISSED** as defendants herein; and it is further

**ORDERED** that upon receipt of the documents for service from plaintiff, the Clerk shall issue summonses and forward them, along with copies of the third amended complaint, to the United States Marshal for service upon the remaining defendants.  The Clerk shall forward a copy of the summonses and third amended complaint to the Office of the Attorney General, together with a copy of this Decision and Order by electronic mail only; and it is further

_____

[6] If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that defendants or their counsel, shall file a response to the third amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff pursuant to the Local Rules of Practice.

**IT IS SO ORDERED.**

Date: March 27, 2024
    Albany, NY

Anne M. Nardacci
U.S. District Judge

25